## STATE OF CONNECTICUT *v.* CAESAR O'NEIL
### (AC 19710)

Lavery, C. J., and Foti and Healey, Js.

Argued March 26—officially released August 21, 2001

*Neal Cone,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Stephen J. Sedensky III,* supervisory assistant state's attorney, for the appellee (state).

HEALEY, J. The defendant, Caesar O'Neil, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2)[1] and 53a-54a (a).[2] On appeal, the defendant claims that the evidence is insufficient to support his conviction because the case that the state presented against him was one of attempt to incite the injury or killing of another person in violation of General Statutes §§ 53a-49 and 53a-179, an offense different from that alleged in the information.[3] We reverse the judgment of the trial court.

The jury could have reasonably found the following facts. In the early morning hours of July 4, 1993, Eddie Smalls and Orlando Suter were riding in a stolen, white Acura automobile in Bridgeport on their way to a party. Smalls was operating the vehicle, and Suter was sitting in the front passenger seat. As Smalls, whose nickname

[1] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] The defendant also raises claims regarding the propriety of the trial court's instructions to the jury. Because we conclude, however, that the issue of the insufficiency of the evidence is dispositive, we do not address the other issues raised by the defendant in this appeal.

is "Pooch," approached the area of the party, he saw the defendant and a male, known as "Famous," sitting in a car. Smalls drove past the car because Suter and the defendant were members of feuding, rival gangs. The defendant then began to follow Smalls and, suspecting that a gunfight would ensue, Smalls and Suter pulled out their handguns. The defendant and at least one other male in the car with the defendant started shooting at Smalls and Suter. Suter was shot and killed as a result of the gunfight.

Later, the defendant was arrested in connection with the murder of Suter. Smalls provided a signed, sworn statement to the police in which he identified the defendant as one of the shooters. A copy of the statement was turned over to the defendant's attorney. Smalls also made an identification of the defendant through a photographic array after he told the police that he had known the defendant for several years. Smalls was scheduled to be a witness against the defendant at his probable cause hearing. After consulting with his attorney, however, the defendant waived his right to the probable cause hearing in open court. Smalls also was expected to testify against the defendant at his trial.

While awaiting trial, on April 30, 1997, the defendant, who was incarcerated at the Walker correctional facility, sent out mail. John Hart, a former correction officer at the facility who monitored the inmates' mail, intercepted the defendant's letters. According to Hart, the outgoing mail was collected in such a way that each bundle could have come from only a specific group of cells. From a bundle containing the outgoing mail from the six cells that included the defendant's, Hart examined an envelope on which was written the defendant's inmate number and "Vassel O'Neil."[4] Inside that enve-

---

[4] Besides Caesar O'Neil, the department of correction also listed "Mark Smith, a Vassel O'Neil and a Vassel Yellow" as other names by which the defendant was known.

lope, there was a letter written in English and another envelope. The latter envelope was addressed to Rose Evans[5] and contained another letter using some kind of code that Hart believed he deciphered to read as requesting that a man named Wayne kill "Pooch," also known as Smalls. Hart gave those items to his supervisor.

Thereafter, the defendant was charged with attempt to commit the murder of Smalls in violation of §§ 53a-49 and 53a-54a. The defendant's trial on that charge was consolidated for trial with a second information that charged him with the murder of Suter.

At trial, James Streeter, a documents examiner for the state police, testified that he had examined the envelope containing the coded letter, the envelope inside that envelope, the letter inside the latter envelope and a handwritten sentence on the reverse side of a page of the coded letter. As a result of his examination, Streeter concluded that they all were written or addressed by the same individual. Michael Birch, a cryptanalyst for the Federal Bureau of Investigation, had been asked by the state to decode the coded portion of the letter. Birch testified that the code used was "a simple substitution code," which means that a letter of the alphabet is substituted with either another letter, a symbol or a number.[6] Smalls also testified at trial that

---

[5] Rose Evans was described by the defendant as his mother, who lived at 142 Lorraine Street, Bridgeport, and as the person who he had designated for emergency contact.

[6] According to Birch, once decoded "letter for letter" and uncorrected for any errors made by its author, the letter reads as follows: "Yo Wayne, I'm going to get straight to the point. I need you to take care of Pooch and I mean immediately. He is the only and the key witness in one of my cases. Without him the case would be dismissed. Make sure you'll gloved up, masked up and get rid of the john piece for piece. And make sure y'all alibi states that y'all were in New York at that point in time. And you'll make sure somebody in New York is saying y'all was there with them. And make sure y'all get the time schedule worked out between everybody and how y'all got to New York. Better to and reads quay by car. You'll make cure you'll have a driver and the color of the car, and everybody has to be saying

he was called "Pooch" and that the defendant knew a Wayne Gray.

At the close of the state's case-in-chief on the two consolidated cases, the defense counsel made a motion for a judgment of acquittal on both charges, which the trial court denied. Thereafter, the court agreed that the jury would be informed of Suter's 1992 conviction for having a pistol without a permit and for carrying a dangerous weapon after which the defendant would rest his case. Anticipating that the state would put on a rebuttal case, the defense again made a motion for judgments of acquittal, and again they were denied. On March 2, 1999, the defendant was found guilty of attempt to commit the murder of Smalls, but a mistrial was declared on the charge of murder in connection with Suter's death because of a deadlocked jury.[7] For his conviction of attempt to commit murder, the defendant was sentenced to the custody of the commissioner of correction for a term of twenty years. This appeal followed.

I

The defendant claims that there was insufficient evidence to support his conviction of attempt to commit murder because the state presented a case of attempt to incite the injury or the killing of another person. In raising his claim, the defendant predominantly depends on *State* v. *Schleifer*, 99 Conn. 432, 121 A. 805 (1923), on appeal after remand, 102 Conn. 708, 130 A. 184 (1925), for the proposition that a mere solicitation can-

---

the same thing, especially you, the driver and the people in New York. Don't forget to work out the time. That is a very important part of you guys alibi. Once that all take care of, everybody will be all right. . . ."

[7] Thereafter, the defendant was retried on a charge of having participated in the murder of Suter. The jury in that retrial found him guilty of that charge on June 11, 1999. On June 18, 1999, the defendant was sentenced to fifty years imprisonment to be served consecutively to his sentence for attempt to commit murder.

not constitute an attempt to commit murder. The defendant contends, on the basis of *Schleifer*, which is in accordance with the great weight of authority, that the evidence is insufficient and, consequently, the judgment must be reversed.[8]

Initially, we note that because the defendant did not raise his claim at trial, it is unpreserved. The defendant contends, however, that his claim nonetheless is reviewable in accordance with federal and state precedents.

We agree with the defendant that his claim is reviewable. The United States Supreme Court in *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), held that the due process clause of the fourteenth amendment to the United States constitution commands that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a

---

[8] Prior to beginning our discussion and analysis of what we determine is the dispositive issue in this appeal, we must comment briefly on a circumstance that makes our review somewhat difficult. The defendant's principal brief is thirty-five pages long, and about one-third of it is concerned with his *Schleifer* claim. In his principal brief, the defendant develops and analyzes at great length why *Schleifer*, which he asserts is still good law, requires that the judgment of conviction be reversed. The state, on the other hand, does not make any mention of *Schleifer* in its brief, nor does it refer to the defendant's claim and analysis of it. The state does not even include *Schleifer* in its "Table of Authorities" at the opening of its brief. In his reply brief, the defendant, citing J. Purver & L. Taylor, Handling Criminal Appeals (1980) § 91, p. 144, states that "[t]he admission implied in ignoring it [*Schleifer*] is that the state found no way to minimize the impact of this authority for the defendant-appellant's claim."

Despite the gap in the state's briefing, we do not accept the defendant's suggestion. Rather, in reviewing this appeal, we subscribe to the view that "[t]he process of deciding cases on appeal involves the joint efforts of counsel and the court. It is only when each branch of the profession performs its function properly that justice can be administered to the satisfaction of both the litigants and society and a body of decisions developed that will be a credit to the bar, the courts and the state . . . ." (Citations omitted; internal quotation marks omitted.) *Merl* v. *Merl*, 128 App. Div. 2d 685, 686, 513 N.Y.S.2d 184 (1987).

trier of fact beyond a reasonable doubt of the existence of every element of the offense." On the basis of the holding in *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), the *Jackson* court stated that "[t]he constitutional standard recognized in the *Winship* case was expressly phrased as one that protects an accused against a conviction except on proof beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *Jackson* v. *Virginia*, supra, 315. Inasmuch as *In re Winship* established proof beyond a reasonable doubt as an essentially fourteenth amendment due process requirement, it follows that when a conviction that is based on insufficient evidence occurs in a state trial, it cannot constitutionally stand. See id., 317–18. "Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof." *State* v. *Laws*, 37 Conn. App. 276, 281, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995).

In addition, the defendant argues that the "right to be acquitted unless proven guilty beyond a reasonable doubt of each element of the charged offense is a fundamental constitutional right protected by the due process clauses of the federal and Connecticut constitutions. U.S. Const., amend. XIV, Conn. Const., art. I § 8; see *In re Winship* [supra, 397 U.S. 364]; *State* v. *Gabriel*, 192 Conn. 405, 413–14, 473 A.2d 300 (1984)." *State* v. *Smith*, 194 Conn. 213, 217, 479 A.2d 814 (1984); see also *State* v. *Williams*, 202 Conn. 349, 363, 521 A.2d 150 (1987); *State* v. *Hill*, 201 Conn. 505, 512, 523 A.2d 1252 (1986); *State* v. *Clark*, 48 Conn. App. 812, 820–21, 713 A.2d 834, cert. denied, 245 Conn. 921, 717 A.2d 238 (1998). He also argues that *Jackson* v. *Virginia*, supra, 443 U.S. 307, was based squarely on that due process requirement, as stated in *In re Winship*, and that the right to be acquitted unless proven guilty beyond a reasonable

doubt of each element of the charged offense also is guaranteed by the due process clause of the Connecticut constitution, article first, § 8. See *State* v. *Smith,* supra, 217; *State* v. *Williams,* supra, 363; *State* v. *Hill,* supra, 512; *State* v. *Clark,* supra, 820–21. The defendant maintains, therefore, that both the United States and Connecticut constitutions guarantee that a defendant's conviction cannot stand unless it is supported by sufficient evidence.

"Our Supreme Court has said that *Jackson* v. *Virginia,* [supra, 443 U.S. 307] compels the conclusion that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of [*State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989)]. There being no practical significance, therefore, for engaging in a *Golding* analysis [this court will review] the defendant's challenge to his conviction [for insufficient evidence] . . . ." (Internal quotation marks omitted.) *State* v. *Torres,* 47 Conn. App. 205, 219, 703 A.2d 1164 (1997). Accordingly, we will review the defendant's claim.

"In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hollby,* 59 Conn. App. 737, 741, 757 A.2d 1250, cert. denied, 254 Conn. 947, 762 A.2d 905 (2000); see *Jackson* v. *Virginia,* supra, 443 U.S. 307. "Criminal convictions will be upheld only when the defendant's behavior is clearly forbidden by the statute under which he or she has been prosecuted." *State* v. *Smith,* supra, 194 Conn. 222 n.7.

We turn to the defendant's claim that the evidence was insufficient to sustain the conviction of attempt to commit murder pursuant to §§ 53a-49 and 53a-54a because what the state presented and prosecuted was a case not of attempt to commit murder, but rather of attempting to incite the injury or the killing of another person in violation of §§ 53a-49 and 53a-179a.[9] In making his claim, the defendant maintains that Connecticut common law, in accordance with the great weight of authority, has held that proof that the defendant solicited another to kill a third person is insufficient by itself to prove beyond a reasonable doubt that the defendant committed the crime of attempt to commit murder.

"There has been much debate whether mere solicitation constitutes an attempt. . . . The question is whether the defendant's mere act of solicitation should be regarded as an attempt by the defendant to commit the offense. Most courts will answer 'no.' " P. Low, Criminal Law (1984) p. 289. "Although there is authority to the contrary, most courts take the view that the *mere act of solicitation* does not constitute an attempt to commit the crime solicited." (Emphasis added.) 4 F. Wharton, Criminal Law (15th Ed. Torcia 1996) § 671, p. 525. The legislature, of course, may itself evince an intent that a solicitation be treated as the equivalent of an attempt. See, e.g., *State* v. *Jovanovic*, 174 N.J. Super. 435, 438–40, 416 A.2d 961 (1980) (legislative revision of New Jersey Penal Code intended to make solicitation punishable as attempt), aff'd, 181 N.J. Super. 97, 436 A.2d 938 (App. Div. 1981). "Although in some jurisdictions solicitations are tried as indictable attempts, either by virtue of judicial decisions failing to distin-

---

[9] General Statutes § 53a-179a (a) provides in relevant part: "A person is guilty of inciting injury to persons or property when, in public or private, orally, in writing, in printing or in any other manner, he advocates, encourages, justifies, praises, incites or *solicits* . . . the killing or injuring of any class or body of persons, or of any individual." (Emphasis added.)

guish them, or by statutory provisions, the great weight of authority is otherwise. Analytically the two crimes are distinct." F. Sayre, "Criminal Attempts," 41 Harv. L. Rev. 821, 857–58 (1928). "It is generally held that a solicitation does not constitute an attempt." R. Perkins, Criminal Law (2d Ed. 1968) p. 585 & n.66. In *State* v. *Schleifer*, supra, 99 Conn. 432, on which the defendant heavily depends, "[t]he contention that solicitation is not a crime distinct from a criminal attempt [was] squarely met and disapproved by the court." Note, "Orator Urging Acts of Violence Guilty of Solicitation," 33 Yale L.J. 98 (1923).

The facts in *Schleifer* are worth noting. In that case, the defendant addressed an assemblage of striking railroad workers[10] and urged them to commit acts of violence that clearly were felonies and misdemeanors. The information charged that the defendant "did unlawfully solicit, urge, command, counsel and endeavor to incite, cause and procure some or all of a large number of persons assembled, to the State's Attorney unknown, to perpetrate or attempt to perpetrate the crimes of

---

[10] The defendant's oral address to the workers was as follows: "You will never win the strike with soft methods. You young men ought to go out on the bridge. Don't use eggs, use coal or indelible ink. Break foremen's windows at their homes. Watch the scabs when they come from work, lay for them, especially on pay day. Take them in a dark alley and hit them with a lead pipe. That is the softest thing you can use. Reimburse yourselves for what we have sacrificed for five months. Don't forget to bump off a few now and then, so Mr. Pearson will know that you are not getting cold feet. You car men know how to take a brake-shoe off. Take the brake-shoe and put it under something that will put the cars off the irons. A little sand or emery in the journal boxes will help greatly. Don't be satisfied with trimming the engines. Put some of the cars on the bum. Also if convenient, put something in between the frames and rods of engines on sidings. Get busy young fellows, and trim these scabs. Things are running too smooth on the New Haven road, but let me hear from you while I am here. Go ahead and rip things and don't let the injunction stop you from trimming these scabs. Don't forget to tie them up with derailments. You boys ought to cut them all up." (Internal quotation marks omitted.) *State* v. *Schleifer*, supra, 99 Conn. 434.

murder, robbery, aggravated assault with deadly or dangerous weapons, assault with intent to murder and assault with intent to rob, the same being felonies or aggravated crimes akin to felonies . . . ." *State* v. *Schleifer*, supra, 99 Conn. 433–34.

The trial court quashed the information. Id., 434. In so doing, that court held in part[11] that "[w]hile it cannot be seriously denied that the public utterances in a promiscuous assembly of such entreaties and exhortations as are charged in this information, are highly prejudicial to the public peace, and ought to be seriously penalized, it is a situation that should be met by appropriate legislation. I do not feel warranted in view of all the authorities in undertaking to extend the present limitations of the common-law crime of solicitation so as to include the acts of the accused now under consideration." (Internal quotation marks omitted.) Id., 435.

At the time that the defendant in *Schleifer* committed the alleged solicitation, Connecticut had no statute regarding solicitation. Thereafter, and before our Supreme Court decided *Schleifer*, the legislature, in response to the quashing of the information, enacted such a statute.[12]

---

[11] The trial court also held that the information was defective in that the inducement or invitation must be alleged to have been "directed to one individual, soliciting the accomplishment of some particular act, which if complied with, would result in the commission of some specific offense." *State* v. *Schleifer*, supra, 99 Conn. 435. The Supreme Court disagreed, stating that it was not necessary that the information make such an allegation, explaining that "[t]he solicitation was directed to each one present in the assemblage." Id., 440. In *Schleifer*, the state appealed from the judgment that was rendered after the quashing of the information by the court.

[12] The 1923 statute regarding solicitation, chapter 178, provides in relevant part: "Any person who shall, in public or private, orally, in writing, in printing or in any other manner, advocate, encourage, justify, praise, incite or solicit the unlawful burning, injury to or destruction of any public or private property or advocate, encourage, justify, praise, incite or solicit . . . the killing or injury of any class or body of persons, or of any individual, shall be fined not more than five thousand dollars or imprisoned not more than ten years or both."

In *Schleifer*, the Supreme Court held that "[a] mere solicitation by itself is never an attempt. And the inciting or urging, whether it be by a letter or word of mouth, is a *mere* solicitation, and it does not change its character if the solicitation to crime is accompanied by a bribe as an inducement to its commission."[13] (Emphasis added.) Id., 438. In determining that "[a] mere solicitation by itself is never an attempt," the *Schleifer* court also held that "[a]n attempt necessarily includes the intent [to commit a crime], and also an act of endeavor adapted and intended to effectuate the purpose. . . . The act of endeavor must be some act done in part execution of a design to commit the crime." (Citation omitted; internal quotation marks omitted.) Id. That reasoning gives rise to the inquiry, as *Schleifer* opined, "of what sort must be the overt act necessary to satisfy the definition of an attempt . . . ." (Internal quotation marks omitted.) Id. The court in *Schleifer* reasoned that although it was clear that "the act need not be the next preceding on proximate act necessary to consummation of the crime intended . . . the mere offer of money, or solicitation, to commit [a crime] is not the sort of act necessary to satisfy the definition [of attempt]." (Internal quotation marks omitted.) Id.

Keeping in mind the previous reference to the language in *Schleifer* that "[a] mere solicitation by itself is never an attempt"; id.; that analysis aptly is explained in a later decision by the Supreme Court of Idaho in *State* v. *Otto*, 102 Idaho 250, 254, 629 P.2d 646 (1981). The court in *Otto* held that "[t]he solicitation of another, assuming neither solicitor nor solicitee proximately acts toward the crime's commission, cannot be held for an attempt. He does not by his incitement of another to criminal activity commit a dangerously proximate act of perpetration. The extension of attempt liability back to the solicitor destroys the distinction between

---

[13] In this case, of course, we have no bribe or any other inducement.

preparation and perpetration." Id.; see also W. Clark & W. Marshall, Crimes (6th Ed. 1958) § 4.05, p. 200. The prerequisite to an understanding of the general rule "is the recognition that solicitation is in the nature of the incitement or encouragement of another to commit a crime in the future [and so] it is essentially preparatory to the commission of the offense solicited. Thus, it is essentially preparatory to the commission of the targeted offense." *State* v. *Otto*, supra, 252 n.4; see also *People* v. *La Fontaine*, 79 Cal. App. 3d 176, 183, 144 Cal. Rptr. 729 (1978) (holding that mere solicitation does not constitute attempt to commit lewd or lascivious act upon body of child less than fourteen years old because "acts of solicitation constitute preparation only and do not rise to the level of the offense of a criminal attempt"); *Hutchinson* v. *State*, 315 So. 2d 546, 548–49 (Fla. App. 1975) (holding that solicitation of another to commit murder does not constitute attempt to commit murder because mere solicitation is not overt act toward attempt to commit murder); *Gervin* v. *State*, 212 Tenn. 653, 658, 371 S.W.2d 449 (1963) (holding that solicitation of another to commit murder does not constitute attempt to commit murder because "[t]o constitute an attempt there must also be an act of perpetration . . . [and] solicitation is preparation rather than perpetration" [citations omitted]). As we have seen under *Schleifer* and as two commentators note, "[T]he mere speaking of words is an act, and that is the kind of act which most often completes the crime of solicitation, although the crime may also be committed through the written word." 2 W. LaFave & A. Scott, Substantive Criminal Law (1986) § 6.1 (c), p. 10.

The *Schleifer* court appropriately explained that "[i]t is said [that] our court has no right to invent new crimes, and that is true, but it has the right to ascertain and declare the common law, no less the criminal than the civil law." *State* v. *Schleifer*, supra, 99 Conn. 445. Fur-

ther, we note that the court in *Schleifer* stated that "the existence of statutes [in other jurisdictions] to punish solicitation to crime as an independent offense [was] a rule declaratory of the common law as [that] has been quite frequently pointed out . . . ." Id., 441. In that context, the *Schleifer* court, alluding to statutes existing at the time of its decision, decided to follow the general, common-law rule. Id. Accordingly, our Supreme Court declared, inter alia, that under Connecticut common law, there is a distinction between the crimes of solicitation and attempt. That decision, which established the distinction between the two crimes, derived from analysis of prior precedent and is part of our common law. The *Schleifer* distinction has remained unchanged and unqualified in our case law.

The defendant contends that the common-law distinction declared in *Schleifer* still exists and enjoys vitality in our law despite the passage of many years. In so claiming, he also contends that in enacting or revising the solicitation statute, § 53a-179a, and the attempt statute, § 53a-49 (a) (1) of the Penal Code, our legislature intended to maintain the common-law distinction, as articulated in *Schleifer*, between solicitation to commit a crime and an attempt to commit a crime. The defendant goes on to claim, and we agree, that when the Penal Code was revised in 1971, not only had our Supreme Court held that "[a] mere solicitation by itself is never an attempt"; id., 438; although acknowledging that "attempts and solicitations have much in common"; American Law Institute, Model Penal Code and Commentaries (1985) part I, § 5.02, comment (3), p. 373; the legislature nevertheless still decided to enact a separate definition of criminal solicitation. That circumstance tends to support the defendant's argument for the continued vitality of the distinction made in *Schleifer*. The defendant offers sound reasons for that assertion, which we now discuss seriatim.

Our statutory construction in this case begins with the presumption that the statute and the common law should, where possible, be read in harmony. *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 573, 522 A.2d 763 (1987). Statutory construction is a question of law, and our review therefore is plenary. *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). "A statute should not be construed as altering the common-law rule, farther than the words of the statute import, and should not be construed as making any innovation upon the common law which the statute does not fairly express." *Skorpios Properties, Ltd.* v. *Waage*, 172 Conn. 152, 156, 374 A.2d 165 (1976); see *Gore* v. *People's Savings Bank*, 235 Conn. 360, 382, 665 A.2d 1341 (1995); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 50.01. "We do not read statutes to depart from the common law without a *clear* indication of legislative intent to do so." (Emphasis added.) *Leydon* v. *Greenwich*, 57 Conn. App. 712, 721, 750 A.2d 1122 (2000), rev'd in part on other grounds, 257 Conn. 318, 777 A.2d 552 (2001), citing *Elliot* v. *Sears Roebuck & Co.*, 229 Conn. 500, 515, 642 A.2d 709 (1994). "In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." (Internal quotation marks omitted.) *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 715, 735 A.2d 306 (1999), quoting *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 289–90, 627 A.2d 1288 (1993).

In determining whether a defendant's conduct fits within the proscription of that statutory law under which he has been prosecuted, the legislative intent is critical. That intent must be clearly expressed, and a criminal statute, being penal, is to be construed strictly. *State* v. *Smith*, supra, 194 Conn. 221–22 n.7; *State* v. *Zazzaro*, 128 Conn. 160, 167, 20 A.2d 737 (1941). A

purpose of the rule of strict construction is "to make sure that no act which the legislature did not intend to include will be held by the courts within the penalty of the law." (Internal quotation marks omitted.) *State* v. *Zazzaro*, supra, 167; see *Daggett* v. *State*, 4 Conn. 60, 63 (1821). In construing the language of statutes that appears to be ambiguous, courts consider the statutes' legislative history, their language, their purposes and the circumstances surrounding their enactment. *Delinks* v. *McGowan*, 148 Conn. 614, 618, 173 A.2d 488 (1961); *R. A. Civitello Co.* v. *New Haven*, 6 Conn. App. 212, 223, 504 A.2d 542 (1986).

As previously mentioned, the precursor to the present solicitation statute, § 53a-179a,[14] was enacted in 1923[15] when the legislature, in the period between the trial judge's decision in *Schleifer* quashing the information and the time our Supreme Court handed down its decision in *Schleifer*, responded[16] to the trial court's action by enacting a statute prohibiting the solicitation of injury to persons or property.[17] One commentator

[14] See footnote 9.

[15] This state since 1923 has had a statute prohibiting the solicitation of injury to persons or property. See Public Acts 1923, c. 178, General Statutes (1930 Rev.) § 6072; General Statutes (1949 Rev.) § 8382; General Statutes (1958 Rev.) § 53-44; Public Acts 1969, No. 452, § 9; Public Acts 1971, No. 871, § 52; General Statutes § 53a-179a.

[16] It is fair to assume that the legislature, in enacting the 1923 statute, was responding to the trial judge's view in *Schleifer* that the matter be met by legislative action. That is particularly so when one examines the following portion of the trial judge's memorandum of decision on the motion to quash: "While it cannot be seriously denied that the public utterances in a promiscuous assembly of such entreaties and exhortations as are charged in this information, are highly prejudicial to the public peace, and ought to be seriously penalized, it is a situation that should be met *by appropriate legislation.* I do not feel warranted in view of all the authorities in undertaking to extend the present limitations of the common-law crime of solicitation so as to include the acts of the accused now under consideration." (Emphasis added.) *State* v. *Schleifer*, supra, 99 Conn. 435.

[17] The present statute, § 53a-179a (a), is substantially similar to the original statute from 1923 regarding solicitation. Minor changes subsequently were made to that statute, but they are insignificant to our inquiry.

referred to that response as "a drastic statute." Note, supra, 33 Yale L.J. 99.

Throughout the almost eight decades since the enactment of the 1923 statute on solicitation, Connecticut has had a criminal statute prohibiting the solicitation of injury to persons or property. Years later, in the 1960s and culminating in the enactment of our Penal Code,[18] Connecticut engaged in a sweeping examination and study by a commission appointed to revise and codify the criminal statutes of this state. See 31 Spec. Acts 348, No. 351 (1963), 32 Spec. Acts 323, No. 314 (1965); *State* v. *Kluttz*, 9 Conn. App. 686, 717, 521 A.2d 178 (1987) (*Bieluch, J.*, concurring). The commentary of such a commission, interspersed as it is with references to various sections of our Penal Code, may well illuminate our inquiry especially as to evidence of legislative intent.[19]

In its commentary on title 53a, which constitutes our Penal Code, the Commission to Revise the Criminal Statutes clearly states, at the outset, in relevant part: "The Commission Comments which appear herein under the various sections of the Penal Code which was enacted by the 1969 General Assembly, and amended by the 1971 General Assembly, *are meant to indicate the rationale, background and source of the various portions of the Code, as an aid to interpretation thereof.*" (Emphasis added.) Commission to Revise the Criminal Statutes, 28 Connecticut General Statutes Annotated (West 1994) § 53a-1, commentary on title 53a, the Penal Code, pp. 201–202. That same section of the commentary further notes the commission's reliance on other

---

[18] Our Penal Code became effective on October 1, 1971. Public Acts 1969, No. 828, § 1.

[19] It is well established that the report and commentary of a commission on a revision of statutory law provides evidence of legislative intent. *State* v. *Ryan*, 48 Conn. App. 148, 156, 709 A.2d 21, cert denied, 244 Conn. 930, 711 A.2d 729, cert. denied, 525 U.S. 876, 119 S. Ct. 179, 142 L. Ed. 2d 146 (1998).

sources: "The drafters of the new [penal] code relied heavily upon the Model Penal Code and the various state criminal codes, especially the penal code of New York." *State* v. *Hill*, 201 Conn. 505, 516–17, 518 A.2d 388 (1986).

"Other provisions are based on comparable portions of the Model Penal Code. . . . The comments do not cover every single section; rather, they are an attempt to focus on those sections which, in the opinion of the Commission, require comment." Commission to Revise the Criminal Statutes, supra, § 53a-1, commentary on title 53a, the Penal Code, p. 202. Interestingly, in that connection, there is no commission commentary on § 53a-179a, the solicitation statute, but there is comment on § 53a-49, the attempt statute, which indicates that § 53a-49 incorporates two new concepts, "the formulation of which is used to distinguish acts of preparation from acts of perpetration and is contrasted with criteria specified in *State* v. *Mazzadra*, 109 A.2d 873, 141 Conn. 731 (1954)."[20]

Section 53a-49 requires more than a mere start of a line of conduct to constitute an attempt. It requires that the line of conduct already taken be unambiguous in supporting a criminal purpose. Commission to Revise

---

[20] As to General Statutes § 53a-49, our attempt statute, the commission comment states in relevant part: "*The section introduces two new concepts*: (1) the act must be a substantial step in a course of conduct planned to accomplish the criminal result, and (2) the act must be strongly corroborative of criminal purpose in order for it to constitute such a substantive step. *This formulation is used to distinguish acts of preparation from acts of perpetration and is contrasted with criteria specified in State v. Mazzadra, 109 A.2d 873, 141 Conn. 731 (1954),* that 'the acts done must be at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the actor at least to be possible of commission by the means adopted.' This section requires more than a mere start of a line of conduct leading to the attempt. It also requires that the line of conduct already taken be unambiguous in supporting a criminal purpose." (Emphasis added.) Commission to Revise the Criminal Statutes, supra, § 53a-49, comment—1971, p. 378.

the Criminal Statutes, supra, § 53a-49, comment—1971, p. 378. That is an intentional distinguishing from the *Schleifer* formulation that "[a] mere solicitation by itself is never an attempt"; *State* v. *Schleifer,* supra, 99 Conn. 438; in that there must also be an act of endeavor adapted and intended to effectuate the criminal purpose. Id. Under the new formulation introduced in § 53a-49, the intent and the overt act, which are verified elements of attempt under the statute, must be closely connected with one another. It is submitted that this distinction between preparation and perpetration inherent in § 53a-49 is a factor that bolsters the distinction that *Schleifer* made between a mere solicitation and an attempt, where the latter requires (as a mere solicitation does not) some "act of endeavor adapted and intended to effectuate the purpose [of the solicitation]." (Internal quotation marks omitted.) Id., 438. Moreover, those new concepts, incorporated into § 53a-49 by the revisors of the Penal Code, contribute to the vitality of *Schleifer*'s distinction.

Our attempt statute, § 53a-49, was based, in part, on the Model Penal Code commission comments. See *State* v. *Servello,* 59 Conn. App. 362, 372, 757 A.2d 36, cert. denied, 254 Conn. 940, 761 A.2d 764 (2000). The commentary on the Model Penal Code, however, discloses that the issue of whether the solicitation to commit a crime constitutes an attempt has been answered in several ways.[21] The general definition of "criminal solici-

[21] The commentary states: "Whether the solicitation to commit a crime constitutes an attempt by the solicitor is a question that has been answered in several ways. One approach to the problem treats every solicitation as a specific type of attempt to be governed by ordinary attempt principles, the solicitation being an overt act that alone or together with other overt acts may surpass preparation and result in liability. A second position is that a naked solicitation is not an attempt, but a solicitation accompanied by other overt acts, for example, the offer of a reward or the furnishing of materials, does constitute an attempt. The third view is similar to the second except that in order to find the solicitor guilty of an attempt the other overt acts must proceed beyond what would be called preparation if the solicitor planned to commit the crime himself. Finally, there is the view that no

tation" is: "A person is guilty of solicitation to commit a crime if with the purpose of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct that would constitute such crime or an attempt to commit such crime or would establish his complicity in its commission or attempted commission." Model Penal Code and Commentaries, supra, § 5.02 (1), p. 364. The commentary to § 5.02 includes the following: "While attempts and solicitations have much in common and are closely related in their historical development, this section provides for separate definition of criminal solicitation on the ground that each of the two inchoate offenses [attempt and solicitation] presents problems not pertinent to the other." Id., § 5.02, comment (3), pp. 372–73.

In our view, a fair reading of the commentary is that the Model Penal Code counseled against classifying solicitations as attempts. Id., pp. 364–73. That is further borne out by the fact that the legislature, aware of the solicitation statute when it reconsidered our Penal Code, decided to follow the spirit of a solicitation statute such as § 5.02 of the Model Penal Code and retained the essence of the preexisting statute. As the defendant points out, the legislature followed that course, knowing, we can assume, that our common law, as seen in *Schleifer*, maintains that a solicitation is not an attempt and that the Model Penal Code upheld that distinction. The legislature is presumed to be aware and to have

matter what acts the solicitor commits, he cannot be guilty of an attempt because it is not his purpose to commit the offense personally. Although there has been considerable conflict, even among the decisions of the same jurisdiction, the trend has seemed to be toward the last two solutions; together they represented the prevailing view when the Code was considered. The decisions in England and the former dominions are in a similar state of confusion, but there too the trend has seemed to be against classifying solicitations as attempts and toward treating them as distinct offenses." Model Penal Code and Commentaries, supra, § 5.02, comment (2), pp. 368–70.

knowledge of all existing statutes, including solicitation, and the effect that its action or inaction may have on them. See *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 386, 698 A.2d 859 (1997). Such considerations contribute to the conclusion that the legislature had determined by strong intimation that *Schleifer's* judicial distinction was not to be changed in any fashion by legislative action.

In further support of his position, the defendant also claims that the inclusion by our legislature of the language, "soliciting an innocent agent to engage in conduct constituting an element of the crime"; § 53a-49 (b) (7); as one of the elements that might be sufficient to prove the "act" element of the criminal attempt statute,[22] is another factor that supports his claim that the legislature did not intend to abandon the common-law distinction made in *Schleifer* between solicitation and attempt. We agree with that proposition.

In enacting the attempt statute, § 53a-49, during the revision of our Penal Code in 1969 and 1971, the legislature in subsection (b) of § 53a-49 elaborated on what is meant by the concept of "substantial step" as contained in subsection (a) (2) of § 53a-49. See Model Penal Code and Commentaries, supra, § 5.01, explanatory note, p. 297. The legislature in § 53a-49 (b) set out a list of behaviors that, without negating the sufficiency of other conduct, "should not be held insufficient as a matter of law if they are strongly corroborative of the actor's criminal purpose." Id., comment (6), p. 329. The

---

[22] General Statutes § 54a-49 (b), which was enacted as part of the revision of the Penal Code, provides in relevant part: "Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law . . . (7) soliciting an innocent agent to engage in conduct constituting an element of the crime."

last of those listed situations is set out in § 53-49 (b)
(7), which is "soliciting an innocent agent to engage in
conduct constituting an element of the crime."[23]

The example given in the Model Penal Code and
Commentaries of why the language, "soliciting an innocent agent," was included as one of the seven examples
of conduct or a situation that might be sufficient to
satisfy the requisite conduct for attempt is an example
attributed to Professor Glanville Williams. That example, as given, is: "(vii) *Solicitation of Innocent Agent.*
Professor Glanville Williams suggests the situation
where 'D unlawfully tells E to set fire to a haystack,
and gives him a match to do it with. . . . If, as D knows,
E (mistakenly) believes that it is D's stack and that the
act is lawful, E is an innocent agent, and D is guilty of
attempted arson; D, in instructing E, does the last thing
that he intends in order to effect his criminal purpose.
(It would be the same if he only used words and did
not give E a match.)' " Model Penal Code and Commentaries, supra, § 5.01, comment (6) (b) (vii), p. 346 &
n.214, quoting G. Williams, Criminal Law: The General
Part (2d Ed. 1961) p. 616.

As the defendant points out, the commentary on Professor Williams' example explains that "[t]he prohibition against criminal solicitation does not apply in this
case because *E* is himself not being incited to commit
a crime. For this reason *E* is not in a position, as an
independent moral agent, to resist *D's* inducements;
unlike the situation in criminal solicitation, *E* is wholly
unaware that commission of a crime is involved. Analytically, therefore, *D's* conduct, in *soliciting an innocent
agent*, is conduct constituting an element of the crime,
which is properly subsumed under the attempt section;
and the solicitation, irrespective of whether it happens

[23] The language of General Statutes § 53a-49 (b) (7) derives verbatim from
the Model Penal Code § 5.01 (2) (b).

to be the last act, should be the basis for finding a substantial step toward the commission of a crime." (Emphasis added). Model Penal Code and Commentaries, supra, § 5.01, comment (6) (b) (vii), pp. 346–47. So E, being an "innocent agent," wholly unaware that a crime is involved, is not in the position to resist or reject D's requests; whereas a noninnocent agent, in that situation, knowing this criminal activity is afoot is free to accept or reject D's requests. The "innocent agent" can fairly be said to include one who is clear of responsibility because for example, he lacks mens rea; E would fall into that category. Therefore, D's conduct, in soliciting E, an innocent agent, is conduct constituting an element of the crime, which comes within § 53a-49 (b) (7) of the attempt section and the solicitations, "irrespective of whether it happens to be the last act, should be the basis for finding a substantial step toward the commission of a crime." Id.

The defendant contends that the inclusion of the "innocent" agent formulation in § 53a-49 (b) (7) is a factor that reinforces the common-law distinction between solicitation and attempt. We agree. In detailing a circumstance when a solicitation may rise to the level of an attempt, the legislature created an exception to the general rule that a mere solicitation does not constitute an attempt. Moreover, by specifically including one specific solicitation situation in the attempt statute, it is logical to conclude that the legislature implicitly determined that other forms of solicitation, in and of themselves, do not constitute an attempt to commit a crime.

Another fair implication that our legislature intended to maintain the distinction between attempt and solicitation pursuant to *Schleifer* arises when considering the comments regarding the "innocent agent" that accompanied the tentative draft of the Model Penal Code of 1960, which happened to be the one closest in

time available to revisers of a state's penal codes in the 1960s and 1970s, and the comments to the Penal Code in 1985. Both were to the effect that when a person solicits an "innocent actor" to engage in conduct that constitutes "an element of the crime," that is "unlike the situation in criminal solicitation"; id., p. 347; but is more like a situation or conduct falling under closer potential attempt liability. That is so, as the defendant claims, and we agree, because the legislature by including the solicitation of an "innocent agent" in the attempt statute, § 53a-49, recognized and intended that soliciting a noninnocent agent would not qualify as an attempt but rather would fall within the offense of solicitation, especially because, in soliciting an "innocent" agent, the actor goes further into criminality than had he solicited a noninnocent agent.

In addition, the defendant also claims that if our legislature intended to eliminate the common-law distinction between attempt and solicitation, it would have done so under other scenarios. We agree. For example, it could have expressly expanded the attempt statute to include "soliciting an agent, whether innocent or not," as the legislature in Missouri did. *State* v. *Molasky,* 765 S.W.2d 597, 600–601 (Mo. 1989). Missouri's expansion of the definition, according to the commentary to the Missouri attempt statute, was designed to cover *all* cases of criminal solicitation because solicitation had not previously been enumerated in the revised Missouri Criminal Code as a specific offense. Id., 601.

On the other hand, our legislature could have repealed the original statute regarding solicitation, which it did not, *and not* have enacted § 53a-179a, which it did. To have taken the latter course would have left this jurisdiction without any criminal solicitation statute, thus rendering the common-law distinction between solicitation and attempt of no legal effect. Our legislature, however, did neither, thereby indicating that

it did not intend to abandon the *Schleifer* common-law distinction between solicitation and attempt. Those considerations further support the defendant's claims of the continuing legal validity of the distinction made in *Schleifer* between solicitation and attempt.

Furthermore, we note that *State* v. *Servello*, supra, 59 Conn. App. 362, supports the defendant's claim of the ongoing vitality of *Schleifer*. In *Servello*, which involved arson for hire, the defendant had been found guilty after a jury trial of the crime of attempt to commit arson in the second degree in violation of §§ 53a-49 (a) (1) and 53a-112 (a) (2). Id., 364. On appeal, the defendant claimed that the evidence was insufficient to support his conviction because his actions amounted a mere solicitation and, thus, pursuant to *Schleifer*, could not constitute a substantial step toward the commission of the crime of attempt to commit arson. Id., 368–75.

In rejecting the defendant's claim, this court in *Servello* analyzed the legislative history of § 53a-112 and concluded that it "was adopted to confront the problem of fires set to defraud insurance companies or those hiring persons to set such fires . . . [and] made it a crime to hire another person to set a fire." (Citation omitted.) Id., 373. This court further stated that "[i]t is . . . presumed that [w]hen the Legislature acts in a particular area, it does so with knowledge of and regard to the prior state of the law, including relevant decisions . . . . It is presumed to know the existing state of the case law in those areas in which it is legislating . . . to be cognizant of judicial decisions relevant to the subject matter of a statute . . . and to know the state of existing relevant law when it enacts a statute. . . . It is thus unlikely that the proscription of arson for 'hire' under the amendment to § 53a-112 [in Public Acts 1982, No. 82-290] effected no corresponding change to the standard for attempted arson as stated in *Schleifer*."

(Citation omitted; internal quotation marks omitted.) *State* v. *Servello,* supra, 59 Conn. App. 374.

This court in *Servello* thus recognized that the legislature, in amending § 53a-112, was presumed to be cognizant of *Schleifer* and its holding. That is borne out by the fact that *Servello* determined "that *Schleifer* has been legislatively overruled by P.A. 82-290 to the extent that it held that solicitation of another to set a fire was insufficient to establish the crime of attempt to commit arson . . . ." Id., 374 n.5. The import of *Servello* to the present matter is that it affirms that our legislature and courts still maintain the vitality of *Schleifer.* Further, it can be gleaned from *Servello* that because our legislature decided to eliminate the application of *Schleifer* in the context of arson, this demonstrates that it intended to preserve *Schleifer* and the distinction between solicitation and attempt in other areas.

It follows from what we have set out, that the judgment of conviction of attempt to commit murder in violation of § 53a-49 (a) (2) and § 53a-54a (a), must, as a matter of law, be reversed because the defendant's conduct did not constitute the crime for which he was charged and tried. When the trier of fact returns a verdict of guilty under such a scenario, that conviction is unconstitutional under both federal and state law, as such a verdict violates due process. See, e.g., *Jackson* v. *Virginia,* supra, 443 U.S. 307. "The right to be acquitted unless proven guilty beyond a reasonable doubt of each element of the charged offense is a fundamental constitutional right protected by the due process clauses of the federal and Connecticut constitutions." *State* v. *Smith,* supra, 194 Conn. 217.

In determining that the conviction is not supported by the evidence, we conclude that the defendant has demonstrated that the common-law distinction that our Supreme Court in *Schleifer* made between solicitation

and attempt is as legally viable as it was when *Schleifer* was decided and when the precursor to our solicitation statute, § 53a-179, was enacted into law in 1923. That distinction, which accords with the weight of authority, has persisted for almost eighty years. The state has not persuaded us otherwise. ·

The state contends that the defendant's conviction of attempt to commit murder should be upheld because his conduct constituted a substantial step toward the commission of the crime. We do not agree.

There are two essential elements that the state must prove beyond a reasonable doubt to sustain a conviction of the crime of attempt to commit murder. First, the state must prove beyond a reasonable doubt that the defendant had the kind of mental state required for commission of the crime of murder. Second, the state must prove beyond a reasonable doubt that the defendant "intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . . [T]he attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption . . . or for other extrinsic cause." (Internal quotation marks omitted.) *State* v. *Jacques*, 53 Conn. App. 507, 522, 733 A.2d 242 (1999); see also R. Leuba & R. Fracasse, Connecticut Selected Jury Instructions Manual (1998) § 3.1 (a), p. 135.

The conduct of the defendant consisted of a mere solicitation or a mere preparation—that is not enough to constitute an attempt. As the court in *Schleifer* held, "A mere solicitation by itself is never an attempt. And the inciting or urging, whether it be by a letter or word of mouth, is a mere solicitation . . . ." *State* v.

*Schleifer*, supra, 99 Conn. 438. Again, as the court in *Schleifer* stated: "An attempt necessarily includes the intent, and also an act of endeavor adapted and intended to effectuate the purpose. . . . The act of endeavor must be some act done in part execution of a design to commit the crime." (Citation omitted; internal quotation marks omitted.) Id. Here, there was no such act of endeavor, only a mere solicitation. In a word, the defendant's conduct did not include any direct act in execution or perpetration of his alleged criminal design. Rather, the defendant's alleged action constituted a mere alleged preparation to place the intended assailant, Wayne, in the position to commence the first direct step toward carrying out the defendant's alleged criminal design.[24] On the basis of our analysis, we conclude that the evidence is insufficient to support the defendant's conviction of attempt to commit murder in violation of §§ 53a-49 (a) (2) and 53a-54a (a).

The judgment is reversed and the case is remanded with direction to render judgment of not guilty of attempt to commit murder.

In this opinion the other judges concurred.

___

[24] We note that in its brief, the state concedes that Wayne could be inferred to be a "willing agent." The state, interestingly, does not claim that Wayne met any of the "innocent agent" criteria.