STATE OF CONNECTICUT *v.* CAESAR O'NEIL
(SC 16607)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.

Argued November 26, 2002—officially released January 14, 2003

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Stephen Sedensky,* supervisory assistant state's attorney, for the appellant (state).

*Neal Cone,* senior assistant public defender, for the appellee (defendant).

*Opinion*

PER CURIAM. The sole question in this certified appeal is whether evidence that a defendant merely solicited a murder, where the alleged solicitation is not accompanied or followed by any act of perpetration, is sufficient to support a conviction for attempted murder

under General Statutes §§ 53a-49 (a)[1] and 53a-54a.[2] We conclude that it is not. Accordingly, we affirm the judgment of the Appellate Court reversing the defendant's conviction.

The opinion of the Appellate Court sets forth the following facts that reasonably could have been found by the jury. "In the early morning hours of July 4, 1993, Eddie Smalls and Orlando Suter were riding in a stolen, white Acura automobile in Bridgeport on their way to a party. Smalls was operating the vehicle, and Suter was sitting in the front passenger seat. As Smalls, whose nickname is 'Pooch,' approached the area of the party, he saw the defendant [Caesar O'Neil] and a male, known as 'Famous,' sitting in a car. Smalls drove past the car because Suter and the defendant were members of feuding, rival gangs. The defendant then began to follow Smalls and, suspecting that a gunfight would ensue, Smalls and Suter pulled out their handguns. The defendant and at least one other male in the car with the defendant started shooting at Smalls and Suter. Suter was shot and killed as a result of the gunfight.

"Later, the defendant was arrested in connection with the murder of Suter. Smalls provided a signed, sworn statement to the police in which he identified the defendant as one of the shooters. A copy of the statement was turned over to the defendant's attorney. Smalls

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

also made an identification of the defendant through a photographic array after he told the police that he had known the defendant for several years. Smalls was scheduled to be a witness against the defendant at his probable cause hearing. After consulting with his attorney, however, the defendant waived his right to the probable cause hearing in open court. Smalls also was expected to testify against the defendant at his trial.

"While awaiting trial, on April 30, 1997, the defendant, who was incarcerated at the Walker correctional facility, sent out mail. John Hart, a former correction officer at the facility who monitored the inmates' mail, intercepted the defendant's letters. According to Hart, the outgoing mail was collected in such a way that each bundle could have come from only a specific group of cells. From a bundle containing the outgoing mail from the six cells that included the defendant's, Hart examined an envelope on which was written the defendant's inmate number and 'Vassel O'Neil.' Inside that envelope, there was a letter written in English and another envelope. The latter envelope was addressed to Rose Evans and contained another letter using some kind of code that Hart believed he deciphered to read as requesting that a man named Wayne kill 'Pooch,' also known as Smalls. Hart gave those items to his supervisor.

"Thereafter, the defendant was charged with attempt to commit the murder of Smalls in violation of §§ 53a-49 and 53a-54a. The defendant's trial on that charge was consolidated for trial with a second information that charged him with the murder of Suter.

"At trial, James Streeter, a documents examiner for the state police, testified that he had examined the envelope containing the coded letter, the envelope inside that envelope, the letter inside the latter envelope and a handwritten sentence on the reverse side of a page of the coded letter. As a result of his examination,

Streeter concluded that they all were written or addressed by the same individual. Michael Birch, a cryptanalyst for the Federal Bureau of Investigation, had been asked by the state to decode the coded portion of the letter. Birch testified that the code used was 'a simple substitution code,' which means that a letter of the alphabet is substituted with either another letter, a symbol or a number. Smalls also testified at trial that he was called 'Pooch' and that the defendant knew a Wayne Gray.

"At the close of the state's case-in-chief on the two consolidated cases, the defense counsel made a motion for a judgment of acquittal on both charges, which the trial court denied. Thereafter, the court agreed that the jury would be informed of Suter's 1992 conviction for having a pistol without a permit and for carrying a dangerous weapon after which the defendant would rest his case. Anticipating that the state would put on a rebuttal case, the defense again made a motion for judgments of acquittal, and again they were denied. On March 2, 1999, the defendant was found guilty of attempt to commit the murder of Smalls, but a mistrial was declared on the charge of murder in connection with Suter's death because of a deadlocked jury. For his conviction of attempt to commit murder, the defendant was sentenced to the custody of the commissioner of correction for a term of twenty years." *State* v. *O'Neil*, 65 Conn. App. 145, 146–49, 782 A.2d 209 (2001).

The defendant appealed from the judgment of conviction to the Appellate Court, maintaining that the evidence against him with regard to the attempt charge was evidence only of a solicitation, that mere solicitation does not by itself constitute an attempt to commit murder, and that the evidence underlying his conviction was therefore insufficient as a matter of law. Id., 149–50. The Appellate Court agreed with the defendant and reversed the judgment of the trial court. Id., 172. We

granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the evidence was insufficient as a matter of law to support a conviction for attempt to commit murder in violation of . . . §§ 53a-49 (a) and 53a-54a?" *State* v. *O'Neil*, 258 Conn. 932, 785 A.2d 229 (2001). We now affirm the judgment of the Appellate Court.

"After fully considering the briefs and arguments of the parties, we conclude that the judgment of the Appellate Court should be affirmed. The thoughtful and comprehensive opinion of the Appellate Court properly resolved the issue in this certified appeal. A further discussion by this court would serve no useful purpose." *Kitmirides* v. *Middlesex Mutual Assurance Co.*, 260 Conn. 336, 338–39, 796 A.2d 1185 (2002), citing *State* v. *Butler*, 255 Conn. 828, 830, 769 A.2d 697 (2001), *Wood* v. *Amer*, 253 Conn. 514, 515–16, 755 A.2d 175 (2000), and *Biller Associates* v. *Route 156 Realty Co.*, 252 Conn. 400, 404, 746 A.2d 785 (2000).

The judgment of the Appellate Court is affirmed.