STATE OF CONNECTICUT *v.* KENYON L. JOSEPH
(AC 28999)

Gruendel, Beach and Pellegrino, Js.

Argued May 19—officially released September 23, 2008

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary W. Nicholson*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Kenyon L. Joseph, appeals from the judgment of conviction, rendered after the jury found him guilty of felony murder, murder as an accessory, conspiracy to commit robbery and two counts of assault in the first degree as an accessory. On appeal, the defendant claims that the trial court improperly (1) failed to instruct the jury adequately in connection with the testimony of an accomplice, (2) failed to instruct the jury properly in connection with the testimony of a jailhouse informant and (3) admitted into evidence testimony of uncharged misconduct. We affirm the judgment of the trial court.

The following facts are relevant to our disposition of the defendant's appeal. On November 11, 2001, in the early morning hours, a shooting occurred at 24 Camp Street in Meriden that resulted in the death of Derling Mercado. During the investigation of the Meriden shooting, the police interviewed the defendant twice, each time recording the interview. The two recordings were played at trial.[1] The defendant told the police that he had stolen a maroon Buick and had driven his friends, Thelburt Hampton, Eddie Schmidt, Kashon Pearson and a man named Cochese to Hartford to buy marijuana. In Hartford, Schmidt and Pearson exited the vehicle to approach some men on the street. The defendant heard shooting and saw Schmidt, with a gun, chasing one of the men. He then saw feathers coming out of the shoulder blade area of one of the men's jackets.

The defendant then told the police that after the Hartford incident, he drove the same group of friends to Meriden to continue their search to buy marijuana. In Meriden, the defendant came upon Mercado, who was standing outside his house at 24 Camp Street with his friends, Carlos Figueroa, Luis Gonzalez, Ezequiel

---

[1] The defendant did not testify at trial.

Rivera, Alexander Rivera, Victor Rivera and Isaias Barreto. The defendant stopped the car to see if Mercado's group had any marijuana. When Mercado's group said "no," Schmidt exited the car with a gun, stole a necklace from Gonzalez and killed Mercado. The defendant stated that Pearson also had a nine millimeter gun in his possession. After the shooting in Meriden, the defendant drove his friends back to New Britain, where he abandoned the stolen Buick.

Other witnesses testified that after Schmidt had exited the car to steal Gonzalez' necklace, the defendant exited the car with a rifle. Pearson exited next with a semiautomatic nine millimeter handgun, and Cochese exited the car unarmed. The defendant fired the rifle in the direction of Figueora, and the bullet ricocheted off the side of a car and into his body. The defendant's gunshot started a chain reaction, and, in the time following the defendant's first gunshot, Schmidt shot and killed Mercado.

The defendant thereafter was arrested and charged with (1) felony murder in violation of General Statutes § 53a-54c, (2) murder as an accessory in violation of General Statutes §§ 53a-8 and 53a-54a, (3) conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2), and (4) two counts of assault in the first degree as an accessory in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8. The defendant elected a jury trial and was found guilty of all charges. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court improperly failed to give an adequate instruction regarding the accomplice testimony of Hampton. Although the defendant concedes that the court gave an instruction regarding the credibility of accomplice testimony, he

argues that the court's instruction was inadequate. We are not persuaded.

The following additional facts are relevant to our disposition of the defendant's claim. Hampton testified as a witness for the state. He testified that the defendant had a rifle, exited the car and fired the first gunshot. He also testified that the defendant fired an additional two or three gunshots after Schmidt had shot Mercado. Hampton further testified that he understood that in exchange for his testimony, the state would inform his sentencing judge of his cooperation in this matter. At the conclusion of the evidence, the defendant submitted to the court a charge regarding a general credibility instruction. He did not, however, ask for a charge on accomplice testimony or object to the charge as given. The court, sua sponte, provided the following accomplice instruction.

"You have also heard testimony of Thelburt Hampton, who has also been charged in connection with the incident for which this defendant is on trial. In weighing the testimony of an alleged accomplice who has not yet been sentenced or whose case has not yet been disposed of, you should keep in mind that he may, in his own mind, be looking for some favorable treatment in the sentence or disposition of his own case. Therefore, he may have such an interest in the outcome of this case that his testimony may have been colored by that fact. Therefore, you must look with particular care at the testimony of an alleged accomplice and scrutinize it very carefully before you accept it.

"There are many offenses that are . . . of such a character that the only persons capable of giving useful testimony are those who are themselves implicated in the crime. It is for you to decide what credibility you will give to a witness who has been charged with a

crime, whether you will believe or disbelieve the testimony of a person who has been charged in connection with the crime charged by the state here. Like all other questions of credibility, this is a question you must decide based on all of the evidence presented to you."

The defendant now argues that the court's accomplice instruction was inadequate. Our first inquiry is to determine whether the defendant properly preserved this claim. The defendant argues that his submission of a general credibility instruction properly preserved this issue. We disagree.

Our Supreme Court has stated: "It is well settled . . . that a party may preserve for appeal a claim that an instruction, which was proper to give, was nonetheless defective either by: (1) submitting a written request to charge covering the matter; or (2) taking an exception to the charge as given. . . . Moreover, the submission of a request to charge covering the matter at issue preserves a claim that the trial court improperly failed to give an instruction on that matter. . . . In each of these instances, the trial court has been put on notice and afforded a timely opportunity to remedy the error. . . . *It does not follow, however, that a request to charge addressed to the subject matter generally, but which omits an instruction on a specific component, preserves a claim that the trial court's instruction regarding that component was defective.*" (Citations omitted; emphasis added.) *State* v. *Ramos,* 261 Conn. 156, 170–71, 801 A.2d 788 (2002); see also Practice Book § 42-16.

The defendant's submitted charge was not specifically related to an accomplice instruction but, rather, was a general credibility instruction. Additionally, the defendant did not object to the court's instruction regarding Hampton's accomplice testimony. The court,

therefore, was not put on notice regarding an accomplice instruction. Accordingly, this claim was not preserved properly.

Although we have determined that this claim is unpreserved, the defendant nevertheless claims that the court's accomplice instruction rises to the level of plain error. Practice Book § 60-5. We disagree.

Plain error review "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . The conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he [or she] testifies. When those conditions exist, it is the duty of the judge to specially caution the jury . . . . In reviewing a challenge to a portion of the jury instructions, the proper test is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Marra*, 222 Conn. 506, 525–26, 610 A.2d 1113 (1992). It is "[a]n examination of the totality of the trial court's instructions [that] reveals [whether] the charge extensively cautioned the jurors to consider the potential motivations and biases of accomplice witnesses." Id., 526.

Here, the court's accomplice instruction extensively cautioned the jurors to consider the potential motivations and biases of Hampton. The court explicitly cautioned the jury that the testimony of Hampton may have been colored by his potentially compelling interest in seeking favorable treatment from the state. Accordingly, there is no error so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings, and there was no plain error.

## II

The defendant next claims that the court improperly failed to give a jailhouse informant instruction, sua sponte, in connection with the testimony of an inmate, Tyrin Blue. We disagree.

The following additional facts are relevant to the defendant's claim. At trial, Blue testified that while in a holding cell in Hartford, the defendant admitted that he, Schmidt and Pearson had been to Hartford and engaged in a shoot-out during a botched robbery shortly before the Meriden incident. Blue had contacted the authorities, through his attorney, to determine if the state would provide consideration in his two pending cases in return for his testimony. Blue testified that he expected that his cooperation in testifying against the defendant would result in a more favorable disposition of his pending cases.

At the conclusion of the evidence, the court provided the following general credibility instruction. "Now, in deciding what the facts are, you must consider all the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe. You may believe all, none or any part of any witness' testimony. In making that decision, you may take into account a number of factors, including the following . . . . Did the witness have an interest in the outcome of the case or any bias or prejudice concerning any party or any matter involved in the case? How reasonable was the [witnesses'] testimony considered in light of all of the evidence in the case, and was the witness' testimony contradicted by what the witness has said or done at another time or by the testimony of other witnesses or by other evidence?" The court further instructed the jury that "certain witnesses have taken the [witness] stand and have admitted having been convicted of felonies. . . . You may consider the [witnesses'] prior convictions in weighing the credibility of the witness and

give such weight to those facts as you decide is fair and reasonable in determining the credibility of the witness."

At no time did the defendant ask for a specific charge on jailhouse informant testimony. Moreover, he did not object to the substance of the court's general credibility instruction. Nevertheless, the defendant again argues that his submitted general credibility charge properly preserved this claim for appeal. As previously discussed, a general subject matter charge does not preserve a claim on appeal when it omits a more specific component. *State* v. *Ramos*, supra, 261 Conn. 170–71. The court, therefore, was not put on notice regarding a jailhouse informant instruction, and this claim was not preserved. Although unpreserved, the defendant invites us to conclude that the court improperly failed to give, sua sponte, a special instruction regarding the credibility of a jailhouse informant pursuant to *State* v. *Patterson*, 276 Conn. 452, 886 A.2d 777 (2005), which was decided after the defendant's trial. He argues that the court's failure to give the special credibility instruction constituted plain error. We disagree.

In *Patterson*, our Supreme Court concluded that "the testimony of an informant who expects to receive a benefit from the state in exchange for his or her cooperation is no less suspect than the testimony of an accomplice who expects leniency from the state, [and] the defendant was entitled to an instruction substantially in accord with the one that he had sought." Id., 470. The defendant argues that the court was required under *Patterson* to give a jailhouse informant instruction. This court already has concluded, however, that the rule announced in *Patterson* is not of constitutional dimension and, therefore, should not be given retroactive effect.[2] *State* v. *Martinez*, 95 Conn. App. 162, 166 n.3,

[2] *Patterson* can also be distinguished from the present case because the defendant in *Patterson* objected to the court's failure to give a requested instruction on the credibility of jailhouse informants, whereas the defendant in the present case made no such objection.

896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006); see also *State* v. *Gonzalez*, 106 Conn. App. 238, 246, 941 A.2d 989 (*Patterson* claim fails under second prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), pertaining to appellate review of unpreserved claims of constitutional error), cert. denied, 287 Conn. 903, 947 A.2d 343 (2008).

At the time the defendant's case was concluded, the court was not required to provide, sua sponte, a jailhouse informant instruction. Moreover, this court recently has concluded that the trial court's failure to give, sua sponte, a jailhouse informant instruction does not present the type of extraordinary situation that warrants plain error review. See *State* v. *Damato*, 105 Conn. App. 335, 351–52, 937 A.2d 1232, cert. denied, 286 Conn. 920, 949 A.2d 481 (2008). Furthermore, the court did instruct the jury on the credibility of witnesses. The defendant, therefore, has failed to demonstrate that the claimed error is so obvious that it affected the fairness and integrity of and public confidence in the judicial proceedings. Accordingly, we conclude that he is not entitled to plain error review of his claim.

### III

The defendant's final claim is that the court abused its discretion when it admitted evidence of uncharged misconduct. Specifically, the defendant argues that (1) the prejudicial effects of his statements to the police regarding his involvement in the Hartford incident, shortly before the Meriden shooting, outweighed the probative value of the evidence and (2) the court failed to balance properly the probative value and prejudicial effect. We are not persuaded.

"Generally, [e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person. Conn. Code Evid.

§ 4-5 (a). Nevertheless, Connecticut Code of Evidence § 4-5 (b) provides: Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . . The list of exceptions provided in the code of evidence is not exclusive but rather is intended to be illustrative. . . .

"To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, [our Supreme Court has] adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . .

"[An appellate court's] standard of review on such matters is well established. The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State v. Damato*, supra, 105 Conn. App. 353–54.

Here, the uncharged misconduct evidence clearly was relevant. The defendant acknowledges as much, conceding that the evidence was relevant as to the issues of intent and knowledge. Moreover, our review of the record reveals that the court engaged in the

requisite balancing test of prejudicial effect and probative value.

When the Hartford evidence first was argued on November 1, 2004, the court stated: "If [the defendant]—if his defense is that he was in the car, this took place, he had no knowledge that it was going to take place, he had no forewarning that it was going to take place, and these guys just jumped out of a car and started shooting, and it came as a complete surprise to him, I mean, the evidence, this incident having taken place that same evening shortly before under very similar circumstances, I think is highly probative. . . . Certainly, prejudicial. If it weren't prejudicial, the state wouldn't be offering it, I understand that. But the question is, is it probative and is it more probative than prejudicial? To me, it's highly probative for the reasons I have stated."

The following day, the defendant again raised the issue of the Hartford evidence and the court responded: "[I]t just seems to me that the evidence of what took place in Hartford shortly before this, involving exactly the same people, a very similar factual situation where somebody gets out of the car and discharges a firearm, that that certainly is probative, highly probative of [the defendant's] intent as an accessory with respect to those three counts. And, again, it also—I agree that it also goes with respect to what his knowledge might be as to what was going to take place in Meriden, that situation having recently taken place in Hartford. So, again, I think . . . the probative value of this incident does outweigh the prejudicial nature of it . . . ."

On the basis of the record before us, we conclude that the court engaged in the requisite balancing test. The court found that the Hartford evidence was relevant to the defendant's intent and knowledge, and although it

was prejudicial, it also was highly probative.[3] Moreover, given the defendant's defense that he was merely an innocent bystander during the Meriden shooting, the evidence was highly probative of the defendant's intent to commit the acts with which he was charged. Further, because no evidence of any actual injury in the Hartford shooting was admitted at trial, we cannot conclude that the jury's emotions necessarily were aroused by the defendant's statement to the police regarding that incident. Accordingly, we cannot say that the court abused its discretion in admitting evidence of the defendant's prior uncharged misconduct.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] The defendant also raises the issue that no limiting instruction was given to the jury regarding the Hartford incident in which the jury would be instructed to use the Hartford evidence only to establish the defendant's intent and knowledge. This argument fails, however, as the defendant never requested a limiting instruction, nor did he object at trial to the lack of a limiting instruction. "It is well established in Connecticut . . . that the trial court generally is not obligated, sua sponte, to give a limiting instruction." (Internal quotation marks omitted.) *State* v. *Rosado*, 107 Conn. App. 517, 528 n.8, 945 A.2d 1028, cert. denied, 287 Conn. 919, 951 A.2d 571 (2008).