******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KENYON L. JOSEPH *v.* COMMISSIONER
OF CORRECTION
(AC 34454)

Beach, Keller and Flynn, Js.

*Argued September 10—officially released October 28, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Jeffrey D. Brownstein*, assigned counsel, for the
appellant (petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with
whom, on the brief, were *Michael Dearington*, state's
attorney, and *Adrienne Maciulewski*, deputy assistant
state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. The petitioner, Kenyon L. Joseph, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the habeas court erred in concluding that his trial counsel, Attorney Thomas E. Farver, rendered effective assistance. The petitioner argues that Farver was ineffective in failing (1) to pursue a "secondary investigation" into whether the petitioner was physically capable of handling a rifle like the one he allegedly used during the Meriden incident that led to his arrest, (2) to obtain a police report regarding a previous Hartford incident, (3) to interview the petitioner's sister about an alleged threat made against the petitioner and his family by an accomplice, Thelburt Hampton, who testified for the state, and (4) to cross-examine Hampton about his alleged threat against the petitioner and his involvement in the Hartford incident. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal and, accordingly, we dismiss the appeal.

In the petitioner's underlying criminal appeal, *State v. Joseph*, 110 Conn. App. 454, 955 A.2d 124, cert. denied, 289 Conn. 945, 959 A.2d 1010 (2008), we noted the following relevant facts. "On November 11, 2001, in the early morning hours, a shooting occurred at 24 Camp Street in Meriden that resulted in the death of Derling Mercado. During the investigation of the Meriden shooting, the police interviewed the [petitioner] twice, each time recording the interview. The two recordings were played at trial. The [petitioner] told the police that he had stolen a maroon Buick and had driven his friends, Thelburt Hampton, Eddie Schmidt, Kashon Pearson and a man named Cochese to Hartford to buy marijuana. In Hartford, Schmidt and Pearson exited the vehicle to approach some men on the street. The [petitioner] heard shooting and saw Schmidt, with a gun, chasing one of the men. He then saw feathers coming out of the shoulder blade area of one of the men's jackets.

"The [petitioner] then told the police that after the Hartford incident, he drove the same group of friends to Meriden to continue their search to buy marijuana. In Meriden, the [petitioner] came upon Mercado, who was standing outside his house at 24 Camp Street with his friends, Carlos Figueroa, Luis Gonzalez, Ezequiel Rivera, Alexander Rivera, Victor Rivera and Isaias Barreto. The [petitioner] stopped the car to see if Mercado's group had any marijuana. When Mercado's group said 'no,' Schmidt exited the car with a gun, stole a necklace from Gonzalez and killed Mercado. . . . After the shooting in Meriden, the [petitioner] drove his friends back to New Britain, where he abandoned the stolen Buick.

"Other witnesses testified that after Schmidt had exited the car to steal Gonzalez' necklace, the [petitioner] exited the car with a rifle. . . . The [petitioner] fired the rifle in the direction of Figueroa, and the bullet ricocheted off the side of a car and into his body. The [petitioner's] gunshot started a chain reaction, and, in the time following the [petitioner's] first gunshot, Schmidt shot and killed Mercado. The [petitioner] thereafter was arrested . . . ." (Footnote omitted.) Id., 456–57.

Following a trial by jury, the petitioner was found guilty on charges of felony murder, murder as an accessory, conspiracy to commit robbery in the first degree, and two counts of assault in the first degree as an accessory. The trial court sentenced the petitioner to fifty-five years imprisonment. The petitioner appealed from his conviction and this court affirmed the judgment of the trial court. Id., 456.

On December 7, 2011, the petitioner filed an amended petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel, due process violations, and prosecutorial misconduct. The habeas court conducted a trial on February 6 and February 15, 2012. At the conclusion of the trial, the court denied the petition for a writ of habeas corpus. The petitioner then filed a petition for certification to appeal, which the court denied.

On March 21, 2012, the petitioner filed the present appeal. On appeal, the petitioner first claims that the habeas court abused its discretion in denying his petition for certification to appeal. He also claims that the court improperly denied his petition for a writ of habeas corpus and erred in concluding that he was not deprived of effective assistance of trial counsel. The petitioner has not briefed any claims of due process violations or prosecutorial misconduct before this court and we thus deem them abandoned on appeal. See *Commissioner of Health Services* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 659 n.2, 594 A.2d 958 (1991) (deeming claims that were not briefed on appeal to be abandoned).

We now turn to the applicable standard of review. Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). To prove an abuse of discretion, the petitioner must demonstrate that the resolution of the underlying claim involves issues that are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. Id., 616. If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the

judgment of the habeas court should be reversed on its merits. Id., 612.

We examine the petitioner's underlying claims of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. *Farnum* v. *Commissioner of Correction*, 118 Conn. App. 670, 674, 984 A.2d 1126 (2009), cert. denied, 295 Conn. 905, 989 A.2d 119 (2010). In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. Id.

Citing the United States Supreme Court's holding in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), our Supreme Court has held that a habeas petitioner's claim that counsel's assistance was so defective as to require reversal of a conviction has two components—deficient performance and proof of prejudice to the defense. *Aillon* v. *Meachum*, 211 Conn. 352, 357, 559 A.2d 206 (1989). With regard to the performance component of this inquiry, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. Id. The test for prejudice requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.

I

We first address the petitioner's claim that Farver was ineffective in failing to pursue a "secondary investigation" into whether the petitioner was physically capable of handling a rifle like the one he allegedly used to shoot Figueroa during the Meriden incident. The petitioner's left arm ends just below the elbow. The petitioner argues that "a secondary investigation could have established through an expert that it was impossible or highly unlikely that the petitioner could have been the shooter or would have been able to manipulate the rifle by raising it with both of his arms as was described in the testimony by various witnesses . . . ." The petitioner also argues that Farver was ineffective in failing to demonstrate to the jury that the petitioner could not have handled the rifle in the manner described by witnesses. We are not persuaded.

The habeas court found that the petitioner had not presented any proof that Farver's failure to conduct a secondary investigation into the petitioner's ability to use a rifle constituted ineffective assistance or prejudiced the petitioner. Farver testified at the habeas trial that he "strenuously" argued to the jury that it was "illogical" to conclude that the petitioner had operated a rifle in the manner described by witnesses. Farver

stated: "I think more significant was the testimony of a witness at trial that the individual firing the rifle— brought it up and literally demonstrating as if he had two hands. And we used that in—in both cross-examination and in the final argument to suggest that therefore it could not have been [the petitioner] who was the individual firing the rifle." Farver testified at the habeas trial that the petitioner's disability did not make it impossible for him to handle a rifle. During closing argument at the criminal trial, the prosecutor used one hand to operate the rifle allegedly used by the petitioner in order to demonstrate to the jury that it was possible for the petitioner to have operated it.

We agree with the habeas court's conclusion that the petitioner did not prove that Farver's failure to conduct a secondary investigation into the petitioner's ability to use a rifle amounted to ineffective assistance of counsel. The burden is on the petitioner to show that his trial counsel's performance was deficient and that he was prejudiced by it. The petitioner argues that a secondary investigation *could have* established that it was impossible or highly unlikely that he was the shooter. As the petitioner has not demonstrated any specific actions Farver could have taken or any specific results that a secondary investigation would have yielded, this argument is speculative. The petitioner is required to meet his burden with "demonstrable realities"; speculation is insufficient. (Emphasis omitted.) *Farnum* v. *Commissioner of Correction*, supra, 118 Conn. App. 675.

Moreover, the petitioner has failed to show any prejudice as a result of Farver's failure to conduct a secondary investigation. The petitioner was convicted on charges of felony murder, murder as an accessory, conspiracy to commit robbery in the first degree, and two counts of accessory to assault in the first degree. The felony convictions underlying the felony murder charge all arose out of accessorial or conspiratorial criminal responsibility. The petitioner admitted to the police that he was present at the Meriden incident and that he drove the car to and from Meriden. These incriminating statements were entered into evidence at his criminal trial. The prosecution presented evidence, which the jury found credible, that the petitioner had been present at the Meriden incident and that he had participated in his cohorts' criminal conduct by driving the car. The prosecution did not need to prove that the petitioner personally had operated the rifle that was used to shoot Figueroa, who survived his injuries, during the Meriden incident in order to convict the petitioner on all counts. See *State* v. *Foster*, 202 Conn. 520, 535, 522 A.2d 277 (1987) (defining accessorial liability as intentionally aiding another to engage in commission of offense); see also *State* v. *Garner*, 270 Conn. 458, 484, 853 A.2d 478 (2004) (noting that, with respect to conspiracy liability, "when the conspirator [has] played a necessary part in

setting in motion a discrete course of criminal conduct, he should be held responsible, within appropriate limits, for the crimes committed as a natural and probable result of that course of conduct" [internal quotation marks omitted]). The petitioner has not reasonably demonstrated that, but for Farver's failure to conduct a secondary investigation, the result of the criminal trial would have been different.

## II

The petitioner next claims that Farver was ineffective in failing to obtain a police report regarding the Hartford incident, in which the petitioner was involved shortly before the Meriden incident leading to his arrest. Before the Meriden incident, the petitioner drove his cohorts to Hartford to buy marijuana. In Hartford, two of the cohorts, Schmidt and Pearson, exited the car to approach a group of men on the street. The petitioner heard the sound of shots being fired and witnessed Schmidt with a gun, chasing one of the men. The petitioner then drove his cohorts to Meriden, where the robbery and fatal shooting of Mercado occurred. *State v. Joseph*, supra, 110 Conn App. 456–57.

The petitioner argues that Farver was ineffective in failing to obtain the police report of the Hartford incident because the report could have been used to impeach the testimony of Hampton, an accomplice who testified as a witness for the state. According to the petitioner, Hampton testified at the petitioner's criminal trial that he did not participate in the Hartford incident with the rest of the petitioner's group, but was picked up in the car by the petitioner on the way to Meriden. The Hartford police report allegedly contained information that contradicted Hampton's statements about his alleged absence from the Hartford incident.

Farver testified at the habeas trial that he attempted to obtain the report before the criminal trial but he did not recall ever receiving it. The prosecutor testified that he contacted the Hartford Police Department to see if there was a report for the Hartford incident, but he never located one. The petitioner testified that he received a police report of the Hartford incident through a freedom of information request. The record is unclear as to when the petitioner made his freedom of information request and received the report. The habeas court found that there was no substantiated proof that the police report existed at the time of the petitioner's criminal trial. We conclude that the petitioner has not shown that the habeas court's factual finding on this matter was clearly erroneous. Farver cannot be said to have rendered ineffective assistance of counsel in failing to obtain a document that may not have existed at the time of the criminal trial.

Furthermore, the habeas court found that, even if the report had existed at the time of the criminal trial,

Farver's failure to obtain the report did not prejudice the petitioner. Farver testified at the habeas trial that part of the defense he presented to the jury at the criminal trial was that the petitioner was not aware that his cohorts intended to engage in criminal behavior in Meriden. Farver further testified that the earlier Hartford incident, in which the petitioner also was the driver of the car by which the other cohorts engaged in the same pattern of conduct as in Meriden, would have undermined that defense. Farver testified that his recollection of his trial strategy was that he wanted to keep information about the Hartford incident away from the jury.

In reviewing ineffective assistance of counsel claims, "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 512–13, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

We conclude that Farver's decision to avoid further emphasis on the Hartford incident, which also involved a shooting, falls within the " 'wide range of reasonable professional assistance' "; id., 512; and did not constitute deficient performance. The petitioner has failed to overcome the presumption that Farver's actions, or lack thereof, with respect to the police report were sound trial strategy. We agree with the habeas court's conclusion that, assuming the police report of the Hartford incident existed at the time of the petitioner's criminal trial, Farver's failure to obtain it did not prejudice the petitioner.

### III

The petitioner also claims that Farver provided ineffective assistance in failing to interview the petitioner's sister, Latoya Joseph, about an alleged threat made against the petitioner and his family by Hampton. The petitioner testified at the habeas trial that, after the Meriden incident and before the petitioner's interviews with the Meriden Police Department, Hampton approached him at his sister's home and threatened him. Hampton allegedly threatened to harm the petitioner and his family if the petitioner told the police about Hampton's involvement in the Meriden incident. Latoya Joseph testified at the habeas trial that she overheard Hampton threaten the petitioner and that she informed Farver of the threat. Hampton did not testify at the habeas trial.

The petitioner argues that Farver should have inter-

viewed his sister regarding Hampton's threat and presented her testimony to the jury in the criminal trial. The petitioner contends that Latoya Joseph's testimony "would explain why the petitioner did not tell the Meriden police in his interview that . . . Hampton got out of the car or was the shooter [of Figueroa] in Meriden. Her testimony would have clearly provided the jury with crucial evidence to suggest that . . . Hampton was the shooter and not [the petitioner]."[1] At the habeas trial, Farver testified that he could not recall the petitioner asking him to speak to Latoya Joseph. He also testified that he could not recall the petitioner or Latoya Joseph informing him of Hampton's threat.

The habeas court found that the petitioner had presented "no proof" that Farver had any information concerning Hampton's threat before the criminal trial. Even if this finding were inaccurate in light of the petitioner's and Latoya Joseph's testimony, which provided the habeas court with *some* evidence that Farver was aware of Hampton's threat before the criminal trial, the petitioner still must prove prejudice. See *Aillon* v. *Meachum*, supra, 211 Conn. 357. We agree with the habeas court's conclusion that, even if Farver knew about Hampton's threat before the criminal trial, the petitioner was not prejudiced by counsel's failure to interview Latoya Joseph or present to the jury evidence of the threat.

On appeal, the petitioner argues that Latoya Joseph's testimony about Hampton's threat might have benefited the petitioner in two ways. First, the jury would have understood that the petitioner's fear of Hampton prevented him from informing the police that Hampton was the one who shot Figueroa in Meriden. Second, the jury may not have credited Hampton's testimony that the petitioner shot Figueroa and may have found that Hampton, rather than the petitioner, was the shooter. Assuming, *arguendo*, that the jury would have accepted Latoya Joseph's testimony in the manner that the petitioner suggests, evidence of Hampton's threat would not have changed the outcome of the petitioner's criminal trial. As discussed previously in this opinion, the petitioner was convicted on all counts as either an accessory or a conspirator. The prosecution presented credible evidence to the jury that the petitioner had been present at the Meriden incident and that he had participated in his cohorts' criminal conduct by driving the car which took them to and from the scene of the crime. Even if Farver had convinced the jury that Hampton shot Figueroa, the jury would still have been able to find the petitioner guilty on all counts. Accordingly, we conclude that the petitioner was not prejudiced by Farver's failure to interview Latoya Joseph and present to the jury her testimony about Hampton's threat.

IV

The petitioner's final claim on appeal is that Farver was ineffective in failing to cross-examine Hampton, who testified as a witness for the state, about Hampton's alleged threat against the petitioner and Hampton's involvement in the Hartford incident. The petitioner first argues that evidence of Hampton's threat could have persuaded the jury that Hampton, and not the petitioner, shot Figueroa. Second, with respect to the Hartford incident, the petitioner argues that Farver could have impeached Hampton's testimony by cross-examining him about his presence in Hartford after he denied being there. The petitioner contends that a more effective cross-examination of Hampton could have "undermine[d] . . . Hampton's testimony which implicated the petitioner as being the one with the rifle" and ultimately "undermined confidence in the verdict."

For the same reasons we discussed in part III of this opinion, the petitioner's arguments on this issue are not persuasive. The petitioner's arguments revolve around Farver's alleged failure to impeach Hampton's testimony that the petitioner shot Figueroa during the Meriden incident. As previously explained, the petitioner was convicted as either an accessory or a conspirator on all counts and, therefore, the prosecution was not required to prove that the petitioner shot the rifle in order to obtain a guilty verdict from the jury. The petitioner was not prejudiced by Farver's failure to cross-examine Hampton about the alleged threat or Hampton's involvement in the Hartford incident.

The petitioner has not shown that the habeas court erred in concluding that he was not deprived of the effective assistance of trial counsel. We are not persuaded that the issues presented in this appeal are debatable among jurists of reason, that a court could resolve them in a different manner, or that the questions raised deserve encouragement to proceed further. See *Simms* v. *Warden*, supra, 230 Conn. 616. Accordingly, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner did not testify at his criminal trial and therefore did not present to the jury through his own testimony evidence of Hampton's threat. *State* v. *Joseph*, supra, 110 Conn. App. 456 n.1.